# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
### WESTERN DIVISION

FILED

MAR 2 8 2001

CLERK

UNITED STATES OF AMERICA
EX REL. KAREN JOHNSON-POCHARDT,

       Plaintiff,

v.

RAPID CITY REGIONAL HOSPITAL;
DR. LARRY P. EBBERT; and
ONCOLOGY ASSOCIATES,

       Defendants.

Civil No. CIV 01-5019
Filed Under Seal

## QUI TAM COMPLAINT

Qui tam plaintiff/relator Karen Johnson-Pochardt states and alleges as follows:

### Parties

1.  Karen Johnson-Pochardt is a resident of Pennington County, South Dakota.  Since August 26, 1996, she has been director of the Cancer Care Institute ("CCI") at Rapid City Regional Hospital ("the Hospital"), in Rapid City, South Dakota.  Ms. Johnson-Pochardt has direct and independent knowledge of the allegations contained herein and is therefore an "original source" under the False Claims Act, 31 U.S.C. Sections 3729-3733.

2.  Defendant Hospital is a regional medical center which owns and operates the CCI as a department of the Hospital.

3.  Defendant Larry P. Ebbert ("Dr. Ebbert") is a resident of Piedmont, South Dakota.  He is a physician specializing in medical oncology.

4.  Defendant Oncology Associates ("OA") is a group of medical oncologists practicing with and under the direction of Dr. Ebbert at the Hospital.  Presently the other physician members of Oncology Associates are Dr. David C. Bartsch, Dr. P. Steven Johnson, and Dr. Mark T. Schroeder.

## Jurisdiction and Venue

5.  The Court has jurisdiction over this case under 28 U.S.C. Section 1331 and 31 U.S.C. Section 3732, which specifically confers jurisdiction for actions brought pursuant to 31 U.S.C. Sections 3729 and 3730.  Venue is proper under 31 U.S.C. Section 3732(a).

## Federal Health Plans

6.  Defendants are health care service providers that participate in federally-funded health care programs including Medicare, Medicaid and benefits for veterans and military personnel.

7.  Payment from federally-funded health care programs for care that the Hospital provides is made by the United States in part based on cost reimbursement calculations the Hospital provides in cost reports.  Further, providers, such as defendants, participating in federally-funded health care programs are required to familiarize themselves with all applicable regulations, procedures, and instructions and to certify in connection with each filed cost report or claim that it and any supporting documentation are true, correct, complete and prepared from the books and records of the provider in accordance with applicable instructions, except as explicitly noted otherwise.  Federal regulations also require providers to furnish intermediaries all information necessary to assure proper payment under the Medicare program.  Federal statute creates a duty to disclose known errors in cost reports and claims.  Concealment of, or silence regarding, material facts affecting a provider's right to reimbursement claimed is therefore not permissible.

8.  During all times relevant to this Complaint, the Hospital, Dr. Ebbert and OA have provided medical services to patients in federally-funded health care programs and have sought payment and reimbursement from the United States and its agents for such services.

## Factual Background

9.  In November 1990, the Hospital and Dr. Ebbert agreed that Dr. Ebbert would move his medical oncology practice into the Hospital.  Around the same time, an agreement was reached that a group of radiation oncologists, now known as Dakota West, would move their practice into the Hospital.  The medical oncology practice, which became known as OA, and the radiation oncology practice became part of the new CCI at the Hospital.

10. In May 1991, the Hospital and Dr. Ebbert entered into a three-year lease whereby Dr. Ebbert leased 400 square feet of space from the Hospital at an annual rent of approximately $19,000 a year.

11.  Also in May 1991, the Hospital and Dr. Ebbert entered into an agreement whereby Dr. Ebbert was designated the medical director of the CCI and was paid $20,000 per year. The $20,000 per year payments to Dr. Ebbert continue to the present day. Upon information and belief, Dr. Ebbert is also compensated by the Hospital on a per procedure basis for chemotherapy administration for Medicare patients.

12.  Thereafter the CCI was moved into a new building attached to the main hospital building. Dr. Ebbert and OA began practicing in the new building.

13.  The lease between the Hospital and Dr. Ebbert ended by its terms on April 30, 1994. From then to at least December of 2000 Dr. Ebbert continued to pay rent at an annual rate of approximately $19,000. Dr. Ebbert and OA continue to practice in Hospital space amounting to considerably more space than the 400 square feet in the expired lease.

14.  The Hospital has provided to Dr. Ebbert and OA for less than fair market value the following: considerable exclusive and common space, the services of licensed practical nurses, the services of other staff, furniture, equipment, supplies, telecommunications and mail equipment and services, and other goods and services which directly benefit Dr. Ebbert's and OA's practice.

15.  Notwithstanding the provision by the Hospital to Dr. Ebbert and OA of space and other goods and services for substantially less than fair market value, upon information and belief Dr. Ebbert and OA submitted claims to Medicare and other federal health care programs that were not reduced for the so-called "site of service differential."

16.  The arrangements between the Hospital, on the one hand, and Dr. Ebbert and OA, on the other, constitute the offering, paying, soliciting, and receiving of remuneration in exchange for, or to induce, the referral of a patient for an item or services covered by federal health care programs, in violation of the Medicare/Medicaid Anti-Kickback Statute, 42 U.S.C. Section 1320a-7b.

17.  The arrangements between the Hospital, on the one hand, and Dr. Ebbert and OA, on the other, constitute the referral of patients where the physician has a "financial relationship" with the hospital, in violation of the Stark Law, 42 U.S.C. Section 1395nn.

18.  Upon information and belief, in presenting claims to the United States and its agents for payment or approval, the Hospital, Dr. Ebbert, and OA knowingly certified that they were not in violation of the Medicare/Medicaid Anti-Kickback Statute or the Stark Law.

19.  Upon information and belief: (a) Dr. Ebbert and OA have had significant error rates in their bills, as high as 38% in 1996-97; (b) Dr. Ebbert, OA, and the

Hospital have double-billed on transfusions and infusions when they were started in the CCI and continued in other areas of the Hospital; (c) Dr. Ebbert and OA have discriminated against Medicare patients needing transfusions; and (d) Dr. Ebbert and OA have "upcoded" follow-up medical oncology visits by patients.

## Count One – Substantive Violations of the False Claims Act

20.   Plaintiff incorporates paragraphs 1 through 19 herein.

21.   Through the acts described herein and otherwise, defendants and their agents, employees and consultants knowingly presented and caused to be presented to the United States and its agents false and fraudulent claims, records, and statements in order to obtain payments and reimbursement for health care services provided under federal health care programs.

22.   Through the acts described herein and otherwise, defendants and their agents, employees and consultants knowingly made, used, and/or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the United States and its agents.

23.   Through the acts described herein and otherwise, defendants and their agents and employees knowingly made, used, and caused to be made or used false records and statements to conceal, avoid, and/or decrease defendants' obligation to repay money to the United States that defendants improperly and/or fraudulently received. Defendants also failed to disclose to the United States material facts that would have resulted in substantial repayments by them to the United States.

24.   The United States paid and continues to pay defendants for claims that would not be paid if the truth were known, has not recovered funds that would have been recovered otherwise, and has otherwise been damaged.

25.   The Hospital's, Dr. Ebbert's, and OA's acts violated the False Claims Act, 31 U.S.C. Sections 3729-3733.

## Count Two – False Claims Act Conspiracy

26.   Plaintiff incorporates paragraphs 1 through 25 herein.

27.   Through the acts described herein and otherwise, defendants entered into a conspiracy among themselves and with others to defraud the United States by getting false and fraudulent claims allowed or paid. Defendants have also conspired to omit disclosing or to actively conceal facts which, if known, would have reduced the United States' obligations to them or resulted in repayments from them to the United States. Defendants have taken substantial steps in furtherance of these conspiracies, inter alia, by preparing false claims, cost reports, certifications, statements and other records, by submitting such false

claims, cost reports, certifications, statements and other records to the United States and its agents for payment or approval, and by directing their agents, employees, and consultants not to disclose or to conceal defendants' fraudulent practices.

28. The United States paid and continues to pay defendants for claims that would not be paid if the truth were known about defendants' conspiracy, has not recovered funds that would have been recovered otherwise, and has otherwise been damaged.

29. The Hospital's, Dr. Ebbert's, and OA's conspiracy violated the False Claims Act, 31 U.S.C. Sections 3729-3733.

WHEREFORE, plaintiff/relator requests that this Court:

1. Order judgment in favor of the United States of America and against defendants;

2. Order that defendants cease and desist from violating the False Claims Act;

3. Award the United States of America civil penalties, treble damages, and interest against defendants as established by law;

4. Enjoin defendants from discharging, demoting, suspending, threatening, harassing or in any other manner discriminating against plaintiff/relator in the terms and conditions of her employment with defendant Hospital because of plaintiff/relator's investigation for, initiation of, testimony for, and assistance in this action;

5. Grant plaintiff/relator the maximum share of the award to the United States of America as established by law;

6. Award plaintiff/relator her attorneys' fees, costs, and expenses; and

7. Grant the United States of America and plaintiff/relator such other and further relief as is just and equitable.

Dated: March 23, 2001

Rexford A. Hagg
Whiting, Hagg & Hagg
1220 Mt. Rushmore Road, Suite Two
P.O. Box 8008
Rapid City, South Dakota  57701

Phone 605-348-1125
Fax 605-348-9744

Of Counsel:
David L. Lillehaug
Minnesota Bar #63186
Lillehaug Law Office
1515 One Financial Plaza
120 South Sixth Street
Minneapolis, MN 55402
Phone 612-339-7566
Fax 612-339-9055